ORMA R. SMITH, District Judge:
 

 This appeal concerns an action instituted in the United States District Court for the Northern District of Texas, wherein plaintiff Jack W. Durrett, Sr. (herein “Durrett”), acting as debtor in possession under Chapter XI of the Bankruptcy Act,
 
 [1]
 
 11 U.S.C. §§ 701, et seq., seeks to set aside and vacate an alleged transfer of real property effectuated nine days prior to the filing of a Petition for an Arrangement under Chapter XI. Durrett charges that the transfer is voidable under section 67(d) of the Act, 11 U.S.C. § 107(d).
 
 [2]
 
 The district court held that the non-judicial sale involved in the. litigation constituted a transfer within the meaning of section 67(d). However, the court determined that the amount paid by the purchaser at the sale conducted by a trustee in the foreclosure of a deed of trust executed by Durrett, the indebtedness which it secured being then in default, was a “fair” consideration and a “fair equivalent” within the meaning of section 67(d)(1), (e)(1) of the Act, 11 U.S.C. § 107(d)(1), (e)(1). The court denied the relief sought by Durrett and he appeals. We reverse.
 

 A review of the record on appeal reflects the following facts. On April 7, 1969, Dur-rett executed a note in the amount of $180,-000.00 in favor of Southern Trust and Mortgage Company (hereafter “Southern”). The note was secured by a deed of trust upon the subject real property. Southern, on April 7, 1969, assigned the trust deed and note to defendant, The Washington National Insurance Company (hereafter “Washington”). Defendant J. H. Fields, Jr. (hereafter “Fields”), was named as the trustee in the deed of trust. The deed of trust contained a provision for a public sale of the real property thereby conveyed, in case of default in payment of the indebtedness.
 

 On December 13, 1976, Fields, in his capacity of trustee, posted the property for
 
 *203
 
 foreclosure sale. The sale was held on January 4, 1977. Defendant Shannon Mitchell, Sr. (hereafter “Mitchell”), appeared at the sale and bid the sum of $115,400.00 for the property. This was the only bid received by the trustee at the sale. The amount of the bid was the exact amount necessary to liquidate the indebtedness secured by the deed of trust. Upon receipt of the bid price, Fields executed and delivered to Mitchell a trustee’s deed to the property. The parties agree that Mitchell did not have any actual fraudulent intent when making the purchase. He responded to the notice of sale and became the successful bidder. Mitchell and Durrett are the only parties now interested in the case.
 

 Durrett contends that the transfer of the property, pursuant to foreclosure of the deed of trust, is voidable under the provision of section 67(d).
 

 The district court dismissed the complaint after a non-jury trial. In its findings of fact, the court held that the fair market value of the property on January 4, 1977, the date of the foreclosure sale, was the sum of $200,000.00.
 

 The parties do not take issue with this finding. Both agree that it is not clearly erroneous.
 
 See,
 
 Rule 52(a), Fed.R.Civ.P.;
 
 Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,
 
 549 F.2d 368, 377 (5th Cir. 1977).
 

 Durrett asserts, on appeal, only one assignment of error, i.e., “Is $115,400.00 payment for an asset worth $200,000.00, a ‘fair equivalent’ ”.
 

 In consideration of the issue of “fair equivalent”, we should determine by what standard we are to judge the district court’s conclusion of law that the amount paid for the property, $115,400.00, is “fair” consideration and a “fair equivalent” within the meaning of section 67(d)(1), (e)(1).
 
 [3]
 

 We have held that our review of conclusions of law by the district court in non-jury cases is not restricted by the “clearly erroneous” rule and will be reversed if incorrect.
 
 See, Ealy v. Littlejohn,
 
 569 F.2d 219, 229 n. 31 (5th Cir. 1978).
 
 See also, Buchanan v. United States Postal Service,
 
 508 F.2d 259, 267 n. 24 (5th Cir. 1975).
 

 The question with which we are confronted is whether the district court’s conclusion of law on the “fair equivalent” issue is incorrect, when considered in light of the record made in the district court and the applicable case law.
 

 The parties have cited a number of cases which deal with this issue. A great percentage of these, however, involve factual situations quite different from the facts which exists in this appeal. Here, there is involved only one event, i.e., one parcel of real estate sold at a foreclosure sale for a price which is approximately 57.7 percent of the fair market value of the property. Is the price paid a “fair equivalent” for the transfer of the property? We hold that it is not.
 

 The sale of real property was involved in one of the cases cited by Durrett,
 
 Schafer v. Hammond,
 
 456 F.2d 15 (10th Cir. 1972). There the Tenth Circuit affirmed a holding by the district court that a sale of real property for approximately 50 percent of its market value was void for lack of a fair consideration. Here, Mitchell paid slightly more than 50 percent (57.7%) for the property involved. The sale, however, deprived the bankruptcy estate of an equity in the property of $84,600.00, if computed on the $200,000.00 market value fixed by the district court.
 

 We have been unable to locate a decision of any district or. appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.
 

 Assuming, arguendo, that we should review the district court’s conclusion of law as a finding of fact under the “clearly errone
 
 *204
 
 ous” standard, the results would be the same. We cannot affirm the district court on this issue. Our review of the entire evidence leaves us with a definite and firm conviction that the price which Mitchell paid for the property at the trustee’s sale was not a “fair equivalent” for the property. Under such circumstances, it is our duty to declare the transfer voidable under section 67(d).
 
 See, United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948);
 
 George W. B. Bryson & Co., Ltd. v. Norton Lilly & Co., Inc.,
 
 502 F.2d 1045, 1049 (5th Cir. 1974).
 
 See also, Tulia Feedlot, Inc. v. United States,
 
 513 F.2d 800, 807 (5th Cir.),
 
 cert. denied,
 
 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975);
 
 Ealy v. Littlejohn, supra
 
 at 229 n. 30.
 

 The defendant-appellee Mitchell seeks to sustain the final judgment of the district court on the ground that the transfer accomplished by the trustee pursuant to the power of sale provision of the deed of trust was not a transfer
 
 made
 
 by the debtor in possession within the contemplation of section 67(d). We find this position to be without merit.
 

 The word “transfer” is defined in section 1 of the Act, 11 U.S.C. § 1. Section 1 provides in pertinent part:
 

 The words and phrases used in this title and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows:
 

 (30) “Transfer” shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor; .
 

 The comprehensive character of this definition leads us to conclude that the transfer of title to the real property of the debtor in possession pursuant to an arrangement under Chapter XI of the Act, by a trustee on foreclosure of a deed of trust, to a purchaser at the sale constitutes a “transfer” by debtor in possession within the purview of section 67(d). The actual transfer of title was made by Durrett to Fields, as trustee, via the deed of trust, executed April 7, 1969, to secure an indebtedness then owing to Southern and thereafter assigned to Washington. Possession of the property was retained by Durrett subject to the power of the trustee to sell and deliver possession of the property, on default, at a foreclosure sale. While the actual conveyance of title by Durrett was made on April 7, 1969, possession was retained until foreclosure of the deed of trust. The “transfer” within the contemplation of the Act, was not final until the day of the foreclosure sale, January 4,1977. This was accomplished within the one-year period provided by section 67(d)(2), 11 U.S.C. § 107(d)(2). This conclusion is supported by reliable and ample authority.
 
 See
 
 1 Collier on Bankruptcy, § 1.30 at 130.28(2)(3) (14th ed. 1967), where it is said: “[t]he present definition covers not only alienations of title but includes surrender of possession”.
 
 See also,
 
 4 Collier on Bankruptcy, § 67.29 at 471, et seq.
 

 For the reasons herein given, the judgment of the district court must be vacated, and the cause reversed with directions.
 

 Upon remand, the district court shall enter judgment for plaintiff-appellant, directing the rescission of the transfer under section 67(d) of the Act, dealing with the property in such manner as will protect Mitchell’s equity therein. Section 67(d)(6), 11 U.S.C. § 107(d)(6).
 

 JUDGMENT VACATED; REMANDED WITH DIRECTIONS.
 

 [1]
 

 . The sale of the property under attack here, occurred January 4, 1977. Plaintiff filed a Petition for Arrangement Under Chapter XI of the Bankruptcy Act on January 13, 1977). Section 403(a) of Pub.L. No. 95-598, Title I (Nov. 6, 1978), 92 Stat. 2549; provides as follows:
 

 A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act [Pub.L. 95-598] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.
 

 Because the acts giving rise to this litigation occurred before the effective date of the new bankruptcy act, Pub.L. 95-598, the rights of the litigants are governed by “Repealed Title 11”. When reference is made herein to the “Act” or the “Bankruptcy Act” the same shall refer to “Repealed Title 11”.
 

 [2]
 

 . Section 67(d) of the Act provides in pertinent part:
 

 (1) For the purposes of, and exclusively applicable to, this subdivision:
 
 ...(e)
 
 consideration given for the property or obligation of a debtor is “fair” (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred
 

 (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; .
 

 (6) A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this title, which is fraudulent under this subdivision against creditors of such debtor having claims provable under this title, shall be null and void against the trustee, except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value: . .
 
 And provided further,
 
 That such purchaser, lienor, or obligee, who without actual fraudulent intent has given a consideration less than fair, as defined in this subdivision, for such transfer, lien, or obligation, may retain the property, lien, or obligation as security for repayment. . . . (Emphasis in original).
 

 [3]
 

 . The district court’s conclusion of law refers to Mitchell’s payment as being the sum of $115,000.00. The findings of fact, however, stated the payment to be $115,400.00. The record reflects the latter to be the correct bid price.